UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES O. HENRY, et al.,

      Plaintiffs,

                                 Case No. 2:12-cv-122
v.                             JUDGE EDMUND A. SARGUS, JR.
                                 Magistrate Judge E.A. Preston Deavers

CHESAPEAKE APPALACHIA, LLC.,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on the parties cross motions for judgment on the pleadings. For the reasons that follow, the Court **DENIES** Defendant's motion (Doc. No. 9) and **GRANTS** Plaintiffs' motion (Doc. No. 11).

## I. BACKGROUND

The facts relied upon in this Opinion and Order were taken from the pleadings or documents that are properly considered part of the pleadings. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (documents are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim); *see also Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (if extrinsic materials merely "fill in the contours and details of the plaintiff's complaint, and add nothing new," they may be considered without converting the motion to one for summary judgment); .

Plaintiffs, James O. Henry, Peggy S. Henry, Mark Henry, Charles C. Henry, and Mary Avis Henry, filed this action for declaratory judgment and to quiet title to the oil and gas rights owned by Plaintiffs in certain real estate owned by them located in Jefferson County, Ohio. The

dispute between the parties arises from the interpretation of a lease between Plaintiffs and

Fortuna Energy, Inc. with an effective date of October 17, 2006 ("the Lease"), which was

subsequently assigned to Defendant, Chesapeake Appalachia, LLC. (Doc. No. 4-1; Complaint,

Ex. A.) Defendant filed counterclaims for declaratory judgment and breach of contract.

The parties agree that the facts are not in dispute and that the question presented to the

Court is whether Defendant properly extended the Lease beyond its Primary Term, which ended

on October 17, 2011, or whether the Lease expired on October 17, 2011. Paragraph 3 of the

lease provides in relevant part:

> This Lease shall remain in force for a primary term of FIVE (5) years from
> October 17, 2006 (the "Primary Term"), and for so long thereafter as any of the
> following occur:
>
> . . . .
>
> (iii) Operations, as hereinafter defined, are being conducted on the Leasehold, or
> on lands pooled, unitized or combined with all or a portion of the Leasehold, with
> no cessation of greater than one hundred eighty (180) consecutive days, provided
> that such Operations result in a well capable of producing oil and/or gas; or
>
> . . . .

*Id.* at ¶ 3.

The Lease defines Operations as follows:

> For purposes of this Lease, "Operations" includes any of the following which may
> occur on the Leasehold, or on lands pooled, unitized or combined with all or a
> portion of the leasehold:
>
> (i) using bona fide good faith efforts to diligently prepare the surface of the
> physical well site area prior to the commencement of actual drilling activities
> including, but not limited to, the commencement of clearing operations on or
> adjacent to the well site area such as the removal of trees, the construction of
> access roads or the delivery of heavy equipment;
>
> (ii) drilling, testing, completing ,reworking, recompleting, deepening,

2

sidetracking, stimulating, fracing, plugging back or repairing a well or equipment;

(iii) any acts in search for or in an endeavor to obtain, maintain or increase the production of oil and/or gas including, without limitation, injecting substances into a well;

(iv) the production of oil and/or gas;

(v) the recovery of any injected substance; or

(vi) any act or acts similar or incidental to any of the foregoing.

*Id.*

Unitization is accomplished as follows:

Lessee is hereby granted the right, in its sole discretion, at any time and from time to time during and after the Primary Term, to pool, unitize or combine all or any portion of the Leasehold with any other land or lands, whether contiguous or not contiguous, at any time before or after the drilling of a well so as to create one (1) or more drilling or production units. Any such drilling or production unit shall not exceed such size as authorized by governmental authority having jurisdiction. For all purposes under the provisions of this Lease, the Leasehold shall be deemed to be unitized upon submission of the drilling permit application pertaining to the relevant drilling or production unit to the governmental authority having jurisdiction. Lessee is granted the right to change the size, shape and conditions of any unit created, however, any such change shall not affect the date upon which pooling or unitization occurred or is deemed to have occurred.

*Id.* at ¶ 12.

On October 14, 2011, Defendant filed a Declaration and Notice of Pooled Unit, which purported to unitize Plaintiffs' property with a drilling unit identified by Defendant as the Asuncion Unit. (Doc. No. 4-1; Complaint, Ex. B.) Defendant first submitted a drilling permit application for the Asuncion Unit on June 30, 2011. (Doc. No. 4-1; Complaint, Ex. C.) At that time, Plaintiffs' property was not part of the Asuncion Unit.

On November 9, 2011, Defendant submitted a drilling permit application to the Ohio

3

Department of Natural Resources ("ODNR") for the newly defined Asuncion Unit that included the previous Asuncion Unit plus Plaintiffs' property.

## II. STANDARD

The Court reviews motions made under Federal Rule of Civil Procedure 12(c) in the same manner it would review a motion made under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Accordingly, to survive a motion for judgment on the pleadings a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* , 550 U.S. 544, 570 (2007). To be considered plausible, a claim must be more than merely conceivable. *Id.* at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (clarifying the plausibility standard articulated in *Twombly*). The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

The parties agree that for the Lease to remain in effect beyond the Primary Term of October 17, 2011, Defendant must have: 1) properly unitized Plaintiffs' property; and 2) commenced "operations" on either Plaintiffs' property or on a unit inclusive of Plaintiffs' property. This issue requires interpretation of the Lease, which the parties both acknowledge is a matter of law for the Court.

Because this case is before the Court on diversity jurisdiction, Ohio law applies to the

4

interpretation of the Lease. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC.*, 636 F. 3d 235, 240 (6th Cir. 2011) ("A federal court sitting in diversity must apply the law of the highest state court if that court has ruled on the matter in dispute; otherwise, the court may rely on case law from lower state courts."). "It is well established that leases are contracts and, as such, are subject to traditional rules governing contract interpretation." *Heritage Court, L.L.C. v. Merritt*, 187 Ohio App.3d 117, 122 (Ohio Ct. App. 2010) ("Interpretation of written contracts, including lease agreements, involves a question of law").

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, 5:08CV1342, 2010 U.S. Dist. LEXIS 114171, 2010 WL 4365514, at *5 (N.D. Ohio Oct. 27, 2010) (citing *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir.2008)). It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement." *Id.* (citing *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55 (Ohio App. 2d Dist. 1998) (quoting *Foster Wheeler Enviresponse, Inc v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997) ("The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties . . . [which] is presumed to reside in the language they chose to employ in the agreement.")). Where no ambiguity exists, courts must "apply the plain language of the contract." *St. Mary's v. Auglaize County Bd. of Commrs.*, 115 Ohio St.3d 387, 390 (2007).

The parties address two arguments to support their positions that Defendant either properly extended the Lease beyond its Primary Term or that Defendant failed to properly extend

5

the Lease. First, Defendant argues that it properly unitized Plaintiffs' property on June 30, 2011,

by its submission of the drilling permit application for the Asuncion Unit because that "is the

date when the first drilling application 'pertaining to' the Asuncion Unit was submitted to the

[O]DNR." (Doc. No. 9 at 12.) Defendant relies on the language in Paragraph 12 of the Lease

that provides for the way in which Plaintiffs' property can be unitized:

> For all purposes under the provisions of this Lease, the Leasehold shall be deemed
> to be unitized upon submission of the drilling permit application *pertaining to* the
> relevant drilling or production unit to the governmental authority having
> jurisdiction.

(Doc. No. 4-1; Complaint, Ex. A, ¶ 12) (emphasis added).

Plaintiffs, however, contend that the relevant drilling or production unit is not the

Asuncion Unit. Plaintiffs rely on the fact that prior to October 14, 2011, the Asuncion Unit did

not include any of Plaintiffs' property and that the application for the only drilling permit that

pertained to any portion of Plaintiffs' property was filed on November 9, 2011 – three weeks

after the Primary Term of the Lease had expired. Consequently, Plaintiffs conclude that

Defendant's proposed interpretation of the Lease nullifies the language requiring a drilling permit

for the Plaintiffs' property to be unitized, and would render void the Lease's requirement of a

drilling permit. This Court agrees.

Filing the appropriate paperwork with a governmental authority has been deemed to

constitute the "commencement of operations" sufficient to place an oil and gas lease into its

indefinite secondary term. *See Kazar v. Meridian Oil & Gas Enterprises, Inc.*, 27 Ohio App.3d

6, 7 (Ohio App. 1985). However, the Lease in this case is atypical. The Lease unambiguously

requires Defendant to take the additional step of submitting a drilling permit application to a

6

governmental authority in order to unitize Plaintiffs' property. Likewise, the Lease requires Defendant to submit a drilling permit before operations could be deemed to be "commenced" pursuant to paragraph 3 of the Lease. Thus, the submission of a drilling permit application for Plaintiffs' property or a unit that included Plaintiffs' property at the time the application was filed is a condition precedent to the unitization of the Plaintiffs' property.

The parties next address the language in paragraph 12 of the Lease permitting Defendant "the right to change the size, shape and conditions of any unit created." Defendant posits that this language permitted it to include Plaintiffs' property in the Asuncion Unit and to have the prior drilling permits for the differently defined Asuncion Unit (the Unit before Plaintiffs' property was included) apply to extend the Lease into its secondary term. Plaintiffs disagree, asserting that the language of paragraph 12 discussing a Lessee's right to alter the unit contemplates the potential alteration of an existing drilling unit or the creation of a new drilling unit after the initial unitization of Plaintiffs' property has already occurred, or alternatively, after a well has been drilled and production has actually occurred on Plaintiffs' property. Plaintiffs' arguments are well taken.

Defendants' interpretation would nullify the Lease's requirement that a drilling permit application be made "pertaining to the relevant drilling or production unit" prior to the expiration of the Primary Term of the Lease, since merely submitting the Declaration and Notice of Pooled Unit would have been sufficient to unitize Plaintiffs' property. The Lease is unambiguous and its plain language simply does not provide for unitization by retroactively applying to Plaintiffs' property a previously obtained permit for a unit that was unrelated to Plaintiffs' property.

Accordingly, the Court concludes that Defendant failed to properly extend the Lease

7

beyond its Primary Term and it, therefore, expired on October 17, 2011.

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's motion (Doc. No. 9) and

**GRANTS** Plaintiffs' motion (Doc. No. 11).  The Clerk is **DIRECTED** to **ENTER**

**JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

_8-8-2012_
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

8